724 A.2d 43

Timothy R. OWENS

v.

**STATE of Maryland.**

**No. 129, Sept. Term, 1997.**

Court of Appeals of Maryland.

Feb. 12, 1999.

George E. Burns, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, Nancy S. Forster, Assistant Public Defender, on brief), Baltimore, for appellant.

Ann N. Bosse, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for appellee.

Before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL JJ.

CHASANOW, Judge.

We are called upon in this case to examine the constitutionality of Maryland's statutory rape law, Maryland Code (1957, 1996 Repl.Vol.), Article 27, § 463(a)(3),[1] as interpreted by this Court in *Garnett v. State*, 332 Md. 571, 632 A.2d 797 (1993), to be a strict liability offense. For the reasons set

---

1. Unless otherwise indicated, hereinafter all statutory references are to Maryland Code (1957, 1996 Repl.Vol.), Article 27.

forth below, we hold that Appellant's rights to due process under the Maryland and United States Constitutions were not violated when, upon being charged with statutory rape, the trial court prevented Appellant from presenting his defense that he reasonably believed the victim was above 13 years of age.

## I.

### A.

The facts in this case are not in dispute. According to the agreed statement of facts, on April 11, 1997, a police officer conducting a routine nighttime patrol discovered Timothy Owens and Ariel Correta Johnson in the rear seat of a parked car, dressing. When asked, Johnson told the police officer that she was 16 years old. After calling Johnson's residence, he discovered that her correct date of birth was October 16, 1983, making her 13 years old at the time of the incident. Owens was born April 27, 1978, making him 18 years old at the time. After compiling evidence that the two had just engaged in sexual intercourse, Owens was charged with second degree rape in violation of § 463(a), which states in pertinent part: "A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person: * * * (3) Who is under 14 years of age and the person performing the act is at least four years older than the victim." Owens elected to proceed by way of a not guilty agreed statement of facts, which the prosecutor recited into the record. It was not disputed that "[t]he victim, if asked, would also testify that she had told the Defendant that she was 16 years of age."

Owens' counsel made a motion to dismiss the charges, arguing that the statute was unconstitutional in that it violated Owens' due process rights under the United States Constitution and the Maryland Declaration of Rights. Owens also argued that, notwithstanding this Court's decision in *Garnett*, the trial court should find that there was a reasonable mistake of fact that negates Owens' guilt. The trial judge denied that

motion and also denied a subsequent motion for judgment of acquittal noting that, under *Garnett,* mistake of age could only be used as a mitigating factor at the time of sentencing. The judge then found Owens guilty of second degree rape and sentenced him to 18 months of imprisonment, with all but time served (12 days) suspended, and 18 months of probation. Owens was also ordered to register as a child sex offender, as required by § 792, and to submit to DNA testing. In sentencing Owens, the court specifically considered mistake of age as a mitigating factor. Owens appealed to the Court of Special Appeals and this Court, on its own motion, granted certiorari before review by that court.

### B.

In *Garnett,* we addressed whether Maryland's statutory rape law required the State to prove whether the defendant knew the female victim was younger than 14 years of age and whether the trial court erred by excluding evidence "that he had been told, and believed, that she was 16 years old." *Garnett,* 332 Md. at 574, 632 A.2d at 798. In ruling that the defendant in *Garnett* could not present evidence that he was told and believed that the defendant had reached 16 years of age, the trial judge ruled that § 463(a)(3) requires proof of only three elements: (1) that there was vaginal intercourse; (2) that the complaining witness was, in fact, under 14 years of age; and (3) the defendant was at least four years older than the complaining witness with whom he had sexual intercourse. 332 Md. at 575, 632 A.2d at 799. The trial court concluded that statutory rape was a strict liability offense and, therefore, mistake of age could not be a defense. On appeal, the defendant argued that § 463(a)(3), which has no express *mens rea* requirement, should be judicially interpreted to allow a defense of a reasonable mistake of age. After reviewing the legislative history of Maryland sex crimes statutes, *Garnett,* 332 Md. at 576, 632 A.2d at 799–800, we concluded:

"[T]he Legislature explicitly raised, considered, and then explicitly jettisoned any notion of a *mens rea* element with respect to the complainant's age in enacting the law that

formed the basis of current § 463(a)(3). In the light of such legislative action, we must inevitably conclude that the current law imposes strict liability on its violators."

*Garnett*, 332 Md. at 587, 632 A.2d at 805. Thus, we held that the trial court had not erred in refusing to allow Garnett to present evidence that he had been told, and in fact believed, that the complaining witness was 16 years old. *Garnett*, 332 Md. at 584–86, 632 A.2d at 803–05. Our holding that the statute did not afford defendant a mistake-of-age defense was consistent with the majority rule in that "a defendant's knowledge of the age of a victim is not an essential element of statutory rape" and that "[p]roof of a statutory rape requires merely proof of an act of sexual intercourse and proof that the victim is below the prohibited age." Colin Campbell, Annotation, *Mistake or Lack of Information as to Victim's Age as Defense to Statutory Rape*, 46 A.L.R.5th 499, 508 (1997). We did not, however, address the constitutionality of § 463(a)(3).

Although we did not address the constitutional question in *Garnett*, we noted that "[t]he requirement that an accused have acted with a culpable mental state is an axiom of criminal jurisprudence." 332 Md. at 578, 632 A.2d at 800. In the instant case, we consider whether the "axiom" we noted in *Garnett* is of constitutional dimensions with respect to Maryland's statutory rape law. In particular, we must determine whether the legislature exceeded its powers under the Fourteenth Amendment of the United States Constitution [2] and Articles 20 and 24 of the Maryland Declaration of Rights [3] by precluding Appellant from raising his mistake-of-age defense.

---

**2.** The Fourteenth Amendment of the United States Constitution, § 1, provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law...."

**3.** The Maryland Declaration of Rights, Article 20, states: "That the trial of facts, where they arise, is one of the greatest securities of the lives, liberties and estate of the People." Article 24 declares "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." The phrase "Law of the Land" has

## II.

The United States Supreme Court has never addressed the constitutionality of denying a defendant the ability to present a mistake-of-age defense to the crime of statutory rape. On a number of occasions, however, the Supreme Court has articulated its strong preference for finding within a criminal statute a *mens rea* element where none has been expressly included. Appellant cites *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), for the proposition that "in order to convict a defendant of a criminal offense, the State must prove a culpable mental state." Morissette had been charged with "unlawfully, wilfully and knowingly steal[ing] and convert[ing]" U.S. government property when he took bomb casings from an Air Force practice bombing range. *Morissette*, 342 U.S. at 247–48, 72 S.Ct. at 241–42, 96 L.Ed. at 292. He challenged his conviction on the ground that he should have been able to present the defense that he reasonably believed that the shell cases had been abandoned. *Morissette*, 342 U.S. at 248–49, 72 S.Ct. at 242–43, 96 L.Ed. at 292–93. In assessing whether the federal larceny statute dispensed with a criminal intent requirement, the Court discussed its "universal and persistent" policy favoring some mental element to justify punishment. *Morissette*, 342 U.S. at 250–51, 72 S.Ct. at 243, 96 L.Ed. at 293–94. In light of the common law's requirement of intent for the crime of theft, the Court reversed the defendant's conviction.

Similarly, in *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), the Court interpreted the National Firearms Act to include a *mens rea* requirement, reversing a criminal conviction. The trial court had ruled that the prosecution did not have to prove that the defendant knew

---

been held to be equivalent to "due process of law," as used in the Fourteenth Amendment. *Matter of Easton, Incompetent*, 214 Md. 176, 187–89, 133 A.2d 441, 447–48 (1957). United States Supreme Court cases on the subject therefore are "practically direct authorit[y]" for the meaning of the Maryland provision. *Northampton Corp. v. Wash. S.S. Comm'n*, 278 Md. 677, 686, 366 A.2d 377, 382 (1976). We therefore address both provisions together.

that he possessed a weapon with characteristics that brought it within the prohibitions of the Act. Reversing the lower courts, the Supreme Court accepted the defendant's argument that the government should have been required to prove beyond a reasonable doubt that the defendant knew the weapon he possessed was an automatic weapon required to be registered under the Act. *Staples*, 511 U.S. at 619–20, 114 S.Ct. at 1804, 128 L.Ed.2d at 624–25. *See also United States v. X–Citement Video, Inc.*, 513 U.S. 64, 78, 115 S.Ct. 464, 472, 130 L.Ed.2d 372, 385 (1994)(holding that the term "knowingly" in an obscenity statute required knowledge that the materials included sexual depictions of minors). We have similarly been reluctant to read into criminal statutes an intent of the legislature to forego a mens rea requirement. *See State v. McCallum*, 321 Md. 451, 456–57, 583 A.2d 250, 252–53 (1991)(interpreting statute prohibiting driving with a suspended license to include a mental element); *Dawkins v. State*, 313 Md. 638, 649, 547 A.2d 1041, 1046 (1988)(observing that the "statutory scheme strongly indicates an intention on the part of the General Assembly to require *scienter* as an element of the [possession of controlled substances and controlled paraphernalia] offenses").

Appellant finds perhaps his strongest support that the absence of a mens rea requirement in a criminal statute is violative of due process in *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), *reh'g denied*, 355 U.S. 937, 78 S.Ct. 410, 2 L.Ed.2d 419 (1958). The defendant in *Lambert* was convicted of violating a Los Angeles felon registration ordinance. The Supreme Court addressed whether due process was violated when the ordinance was "applied to a person who ha[d] no actual knowledge of his duty to register, and where no showing [was] made of the probability of such knowledge." *Lambert*, 355 U.S. at 227, 78 S.Ct. at 242, 2 L.Ed.2d at 231. In finding that the defendant's due process rights were violated, the Court emphasized that the conduct made illegal [was] "wholly passive." *Lambert*, 355 U.S. at 228, 78 S.Ct. at 243, 2 L.Ed.2d at 231. "It is unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed." *Id.*

■ Despite its preference for a *mens rea* requirement when interpreting criminal statutes and its holding in *Lambert,* the "[Supreme] Court has never articulated a general constitutional doctrine of *mens rea." Powell v. Texas,* 392 U.S. 514, 535, 88 S.Ct. 2145, 2155–56, 20 L.Ed.2d ·1254, 1269 (1968). Rather, within certain constitutional limits, states may "create strict criminal liabilities by defining criminal offenses without any element of scienter." *Smith v. California,* 361 U.S. 147, 150, 80 S.Ct. 215, 217, 4 L.Ed.2d 205, 209 (1959), *reh'g denied,* 361 U.S. 950, 80 S.Ct. 399, 4 L.Ed.2d 383 (1960). Several of the cases upholding strict liability statutes involve "public welfare" statutes, "whereby penalties serve as [an] effective means of regulation." *United States v. Dotterweich,* 320 U.S. 277, 280–81, 284–85, 64 S.Ct. 134, 136, 138, 88 L.Ed. 48, 51, 53 (1943)(approving criminal sanction for misbranding of drugs "though consciousness of wrongdoing be totally wanting"); *United States v. Freed,* 401 U.S. 601, 609–10, 91 S.Ct. 1112, 1117–18, 28 L.Ed.2d 356, 362–63 (1971), *reh'g denied,* 403 U.S. 912, 91 S.Ct. 2201, 29 L.Ed.2d 690 (1971)(holding that the National Firearms Act imposes criminal liability on a person possessing hand grenades despite one's ignorance of illegality of such possession); *United States v. Balint,* 258 U.S. 250, 252–54, 42 S.Ct. 301, 302–03, 66 L.Ed. 604, 606 (1922)(similar holding).

The Supreme Court, however, has never suggested that strict criminal liability may be imposed only for regulatory offenses. For example, in *United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), the Court interpreted a federal assault statute to not include a mens rea requirement as to the identity of the victim of a conspiracy. The Court held a criminal defendant liable for conspiracy to assault a federal officer when the defendant had no knowledge that the individual was a federal officer who would subject him to federal criminal jurisdiction. *Feola,* 420 U.S. at 694–95, 95 S.Ct. at 1261–62, 43 L.Ed.2d at 558–59.[4] The Court also has

---

4. Resolving a conflict among the circuits as to the mental element necessary to bring a conspiracy charge, the Supreme Court explicitly

upheld convictions and imprisonment for the strict liability crime of bigamy, even when the defendants reasonably believed they had a valid divorce that would have made the second marriage lawful. *Williams v. North Carolina*, 325 U.S. 226, 238, 65 S.Ct. 1092, 1099, 89 L.Ed. 1577, 1586 (1945), *reh'g denied*, 325 U.S. 895, 65 S.Ct. 1560, 89 L.Ed. 2006 (1945).

Finally, this Court and the Supreme Court have held that under certain circumstances statutes that create conclusive, irrebuttable presumptions may violate due process. "[P]ermanent irrebuttable presumptions have long been disfavored under the Due Process Clause." *Vlandis v. Kline*, 412 U.S. 441, 446, 93 S.Ct. 2230, 2233, 37 L.Ed.2d 63, 68 (1973). In *Vlandis*, the Supreme Court invalidated a Connecticut statute that created an irrebuttable presumption affecting tuition rates at a state university. Under the statute, a student who applied to a Connecticut school while a non-resident or who was a non-resident in the year before applying remained a non-resident for tuition rate purposes for as long as he or she remained a student. *Vlandis*, 412 U.S. at 443, 93 S.Ct. at 2232, 37 L.Ed.2d at 66. The Court said that the Due Process Clause forbids a state from

> "deny[ing] an individual the resident rates on the basis of a permanent and irrebuttable presumption of nonresidence, when that presumption is not necessarily or universally true in fact, and when the State has a reasonable alternative means of making the crucial determination."

*Vlandis*, 412 U.S. at 452, 93 S.Ct. at 2236, 37 L.Ed.2d at 71. *See also Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 647, 94 S.Ct. 791, 799, 39 L.Ed.2d 52, 64 (1974)(public school policies presumed that pregnant women were physically unfit for classroom teaching); *Stanley v. Illinois*, 405 U.S. 645,

---

rejected Judge Learned Hand's "traffic light" analogy, which declared that " 'one cannot be guilty of conspiring to run past [a traffic light of whose existence one is ignorant], for one cannot agree to run past a light unless one supposes that there is a light to run past.' " *United States v. Feola*, 420 U.S. 671, 689, 95 S.Ct. 1255, 1266, 43 L.Ed.2d 541, 555 (1975)(quoting *United States v. Crimmins*, 123 F.2d 271, 273 (2d Cir.1941)).

649–50, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 557–58 (1972)(statute presumed that all unmarried fathers are unqualified to raise their children).

Applying a similar test in *Mahoney v. Byers,* 187 Md. 81, 48 A.2d 600 (1946), this Court struck down a rule promulgated by the Maryland Racing Commission as violative of the Maryland Declaration of Rights. The rule, designed to penalize horse trainers for drugging horses within the 48 hours prior to racing, prohibited persons from "knowingly or carelessly" permitting the administering of a drug. *Mahoney,* 187 Md. at 83, 48 A.2d at 602. The rule then provided that a positive test of horse saliva or urine on the day of the race "shall be conclusive evidence either that there was knowledge of the fact . . . or that he was guilty of carelessness." *Mahoney,* 187 Md. at 84, 48 A.2d at 602. We observed that, because there was no rule requiring trainers to keep watch over their horses day and night in the 48 hours prior to the start of a race, the presumption in the rule arose "out of the thin air," and thus, we held the conclusive presumption invalid. *Mahoney,* 187 Md. at 88, 48 A.2d at 604.

### III.

At the outset, we note that our decision here is not concerned with the wisdom of Maryland's policy of imposing strict criminal liability on those who engage in sexual intercourse with children under age 14. Absent any constitutional prohibition, it is within the "legislative power to define crimes and to fix their punishment." *Scarlett v. State,* 201 Md. 310, 320, 93 A.2d 753, 757 (1953), *cert. denied,* 345 U.S. 955, 73 S.Ct. 937, 97 L.Ed. 1377 (1953). Our only consideration is whether due process requires that Owens be allowed to defend the charge of statutory rape on the grounds that he reasonably believed that the victim was above the age of 13.

An overwhelming majority of courts confronted with a constitutional challenge to statutory rape laws have held that denying a defendant a mistake-of-age defense in a statutory

rape case does not deprive him of his due process rights.[5] We are aware of only one court which has held that due process mandates a mistake-of-age defense to statutory rape, and that holding appears to be based on state, and not federal, constitutional analysis. *See State v. Guest,* 583 P.2d 836 (Alaska 1978).[6] We decline to deviate from the majority rule and uphold the legislature's intent, as determined in *Garnett,* to make statutory rape a strict liability crime. While due process concerns undoubtedly place some limitations on the legislature's ability to create strict liability crimes, for the reasons set forth below, we find that § 463(a)(3) falls within those limits.

## A.

Appellant finds little support in any Court of Appeals or United States Supreme Court decision for the proposition that a mental element is constitutionally required for criminal liability, even when substantial penalties are involved. In support of his argument that the defense of mistake of age is constitutionally required, Appellant contends that the Su-

---

**5.** The following cases specifically reject the contention that constitutional due process requires admitting evidence as to a defendant's reasonable mistake of age in a statutory rape prosecution: *State v. Stokely,* 842 S.W.2d 77 (Mo.1992)(en banc); *United States v. Ransom,* 942 F.2d 775 (10th Cir.1991), *cert. denied,* 502 U.S. 1042, 112 S.Ct. 897, 116 L.Ed.2d 799 (1992); *State v. Campbell,* 239 Neb. 14, 473 N.W.2d 420 (Neb. 1991); *United States v. Brooks,* 841 F.2d 268 (9th Cir.1988), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 922 (1988); *People v. Cash,* 419 Mich. 230, 351 N.W.2d 822 (Mich.1984); *Commonwealth v. Miller,* 385 Mass. 521, 432 N.E.2d 463 (Mass.1982); *State v. Tague,* 310 N.W.2d 209 (Iowa 1981); *Goodrow v. Perrin,* 119 N.H. 483, 403 A.2d 864 (N.H.1979); *Nelson v. Moriarty,* 484 F.2d 1034 (1st Cir.1973).

**6.** The Alaska Supreme Court has interpreted its state constitution more expansively than the federal constitution. *State v. Rice,* 626 P.2d 104, 112 (Alaska 1981)(discussing the court's "concomitant duty to develop constitutional rights under the Alaska Constitution"). As one commentator has observed, this interpretation of the state constitution "enables Alaska to interpret its own due process clause to require a *mens rea* element for second degree sexual abuse [statutory rape], notwithstanding the uncertainty concerning the demands of the United States Constitution." Benjamin L. Reiss, *Alaska's Mens Rea Requirements for Statutory Rape,* 9:2 ALASKA L.REV. 377, 389 (1992)(footnotes omitted).

preme Court, in its *Morissette* and *X–Citement Video* decisions, and this Court, in our decision in *Garnett*, misinterpreted the common law, which, appellant argues, did allow for a reasonable mistake-of-age defense to statutory rape. Authorities are apparently divided as to whether, at common law, a mistake-of-age defense to statutory rape was permitted. A number of courts have stated, for example, that "statutory rape was universally regarded as a strict liability offense until well into the twentieth century." *United States v. Brooks*, 841 F.2d 268, 270 (9th Cir.1988), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 922 (1988). *See also Garnett*, 332 Md. at 587, 632 A.2d at 805 (noting the "traditional view of statutory rape as a strict liability crime"). Conversely, other authorities have explained that, under the early common law and English statutes, mistake of age was a permissible defense to statutory rape. *See* Larry W. Myers, *Reasonable Mistake of Age: A Needed Defense to Statutory Rape*, 64 MICH. L.REV. 105, 109–10 (1965); *Garnett*, 332 Md. at 605–06 n. 14, 632 A.2d at 814 n. 14 (Bell, J., dissenting). As Appellant's brief states, Blackstone's Commentaries, widely accepted as authoritative on English criminal law, explain that "to constitute a crime against human laws, there must be, first, a vicious will; and secondly, an unlawful act consequent upon such vicious will." 4 WILLIAM BLACKSTONE, COMMENTARIES 21 (1769).

It is not necessary for us to resolve the apparent dispute as to whether, at common law, a mistake-of-age defense to statutory rape was permissible. Regardless of the status of the defense at common law, we have determined that our statute does not include a mistake-of-age defense, and the cases simply do not support the proposition that due process mandates that the mistake-of-age defense be allowed. Significantly, our own cases and the Supreme Court cases that articulate the "universal and persistent" policy favoring a mens rea component for criminal liability, *Morissette*, 342 U.S. at 250, 72 S.Ct. at 243, 96 L.Ed. at 293, involve interpretations of state or federal criminal statutes, not interpretations of the Due Process Clause. *See, e.g., Staples*, 511 U.S. at 604, 114 S.Ct. at 1796, 128 L.Ed.2d at 615 (noting that its decision turned

upon "a question of statutory construction"); *McCallum,* 321 Md. at 455–57, 583 A.2d at 252–53 (interpreting a driving with suspended license statute).

In contrast to its policy of favoring inclusion of a mens rea element when interpreting a statute, when interpreting the Due Process Clause the Supreme Court has often endorsed the concept of strict criminal liability. In *Lambert,* the Supreme Court explicitly rejected Blackstone's view that a vicious will "is necessary to constitute a crime, for conduct alone without regard to the intent of the doer is often sufficient. There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition." *Lambert,* 355 U.S. at 228, 78 S.Ct. at 242, 2 L.Ed.2d at 231 (citation omitted). In concluding that the defendant need not have knowledge that the assault victim was a federal agent in *Feola,* the court observed that laws imposing strict liability "embody the social judgment that it is fair to punish one who intentionally engages in conduct that creates a risk to others, even though no risk is intended or the actor, through no fault of his own, is completely unaware of the existence of any risk." 420 U.S. at 690–91, 95 S.Ct. at 1267, 43 L.Ed.2d at 556. In rejecting the defendant's due process challenge to the bigamy statute in *Williams,* the Court concluded:

"The objection that punishment of a person for an act as a crime when ignorant of the facts making it so, involves a denial of due process of law has more than once been overruled. In vindicating its public policy and particularly one so important as that bearing upon the integrity of family life, a State in punishing particular acts may provide that 'he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.' *United States v. Balint,* 258 U.S. 250, 252, [42 S.Ct. 301, 302, 66 L.Ed. 604, 605 (1922) ], quoting *Shevlin–Carpenter Co. v. Minnesota,* 218 U.S. 57, 69, 70, [30 S.Ct. 663, 666, 667, 54 L.Ed. 930, 935, 936 (1910) ]."

325 U.S. at 238, 65 S.Ct. at 1099, 89 L.Ed. at 1586.[7]

█ Nor do we believe that the risk of 20 years of imprisonment or the trial court's requirement that the defendant register as a "child sex offender" renders unconstitutional Maryland's statutory rape law.[8] While courts have considered the substantiality of the penalty imposed by a statute in determining whether a statute includes a mens rea element, they have done so for purposes of statutory construction and not for purposes of constitutional analysis. For example, in *McCallum*, 321 Md. at 457, 583 A.2d at 253, we stated that "the nature of the penalty . . . give[s] some indication that the Legislature did not intend this to be a 'public welfare' [strict liability] offense." Likewise, the Supreme Court's decision in *Staples*, which discusses the severity of the penalty at length, considered the penalty only as a factor in interpreting legislative intent. The Court noted that "a severe penalty is a . . . factor tending to suggest that Congress did not intend to eliminate a *mens rea* requirement." *Staples*, 511 U.S. at 618–19, 114 S.Ct. at 1804, 128 L.Ed.2d at 624. Moreover, the Court gave no indication that Congress would have exceeded any constitutional limits had it made the National Firearms Act a strict liability statute.[9]

---

7. We note that in addition to upholding the strict liability statutes cited above, the Supreme Court in *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), in dicta, apparently accepted the validity of strict liability statutory rape laws when it observed that, as the common law has developed, "[e]xceptions [to the requirement of a guilty mind] came to include sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent." 342 U.S. at 251 n. 8, 72 S.Ct. at 244 n. 8, 96 L.Ed. at 294 n. 8. *See also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 n. 2, 115 S.Ct. 464, 469 n. 2, 130 L.Ed.2d 372, 381 n. 2 (1994)(quoting footnote 8 from *Morissette* ).

8. In this decision, we do not reach the issue of whether, had the trial judge in this case sentenced Owens to the maximum of 20 years of imprisonment, such a sentence would violate Owens' due process or Eighth Amendment rights.

9. Indeed, even though a violation constituted a felony with the possible sentence of 10 years of incarceration, in his dissent, Justice Stevens, joined by Justice Blackmun, disagreed with the majority's interpreta-

██ Having explained that constitutional due process does not impose a universal requirement that criminal laws, such as Maryland's statutory rape law, include a mens rea element, we turn now to more specific requirements of the Due Process Clause.

### B.

██ A fundamental tenet of due process is that persons of ordinary intelligence and experience have a reasonable opportunity to know what actions are prohibited so that they may conform their conduct according to the law. *Bowers v. State*, 283 Md. 115, 120, 389 A.2d 341, 345 (1978). We believe that Maryland's statutory rape law provides constitutionally sufficient notice.

The action for which Owens has been convicted, sexual intercourse with a child under age 14, involves conduct for which Owens was reasonably on notice might run afoul of the law and, therefore, conduct that he could have avoided. Thus, § 463(a)(3) shares little in common with the city ordinance the Supreme Court invalidated in *Lambert*. The ordinance struck down in *Lambert* made it a crime for any convicted person to remain in Los Angeles for more than five days without registering. *Lambert*, 355 U.S. at 226, 78 S.Ct. at 242, 2 L.Ed.2d at 230. In striking down the ordinance, the Court emphasized the defendant's lack of notice and the "wholly passive" nature of the conduct. *Lambert*, 355 U.S. at 228, 78 S.Ct. at 243, 2 L.Ed.2d at 231. The Court said,

"[Failure to register] is unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed.  * * * Violation of [the municipal code's] provisions is unaccompanied by any activity whatever, mere presence in the city being the test.

tion of the statute as requiring a mens rea component, arguing that the National Firearms Act was a public welfare statute imposing strict liability. *Staples v. United States*, 511 U.S. 600, 630, 114 S.Ct. 1793, 1810, 128 L.Ed.2d 608, 632 (1994)(Stevens, J., dissenting).

Moreover, circumstances which might move one to inquire as to the necessity of registration are completely lacking." *Lambert*, 355 U.S. at 228–29, 78 S.Ct. at 243, 2 L.Ed.2d at 231–32.

Unlike the ordinance in *Lambert*, the sexual intercourse proscribed by § 463(a)(3) can hardly be characterized as passive; it involves conscious activity which gives rise to circumstances that place a reasonable person on notice of potential illegality. *See State v. Tague*, 310 N.W.2d 209, 212 (Iowa 1981)(concluding in statutory rape case that "[o]bviously [defendant's] conduct was active in nature and he was alerted to the possible criminal consequences of his acts."). Our 1993 decision in *Garnett*, the state's longstanding prohibition on sexual intercourse with minors, and Maryland laws proscribing other sexual behavior[10] put defendant on notice of the potential risks of miscalculating the victim's age. *Garnett*, 332 Md. at 591, 632 A.2d at 807 (Eldridge, J., dissenting)("[T]he ordinary defendant in [a statutory rape prosecution] is or ought to be aware that there is a risk that the young person is not above the age of consent."). *See also State v. Stokely*, 842 S.W.2d 77, 81 (Mo.1992)(en banc)("[Statutory rape law] clearly notifies potential offenders that mistake concerning a victim's age is not a valid defense and will not be considered by a court."); *Freed*, 401 U.S. at 609, 91 S.Ct. at 1118, 28 L.Ed.2d at 362 (observing that "one would hardly be surprised to learn that possession of hand grenades is not an innocent act"). Moreover, as the Supreme Court has observed, in the case of statutory rape, "the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age." *X–Citement Video*, 513 U.S. at 72 n. 2, 115 S.Ct. at 469 n. 2, 130 L.Ed.2d at 381 n. 2 (dictum). Indeed, it is hard to imagine when a defendant, necessarily four years older than the victim under § 463(a)(3), would be "morally

---

10. *See, e.g.,* § 553 (prohibiting sodomy and authorizing sentences of up to ten years upon conviction); § 554 (prohibiting unnatural or perverted sexual practices and authorizing a potential sentence of ten years upon conviction).

blameless" when he or she engages in sexual intercourse with a child as young as age 13. *Tague,* 310 N.W.2d at 211.

## C.

We next consider Maryland's interest in enacting its statutory rape law and whether the law is suited to that interest. We conclude that the state's purpose in promoting the physical and mental health of children is a compelling one and that the statute is properly designed to accomplish this purpose.

### 1.

Legislators generally have broader discretion in enacting laws to promote the health and welfare of children than they have for adults. "The Court long has recognized that the status of minors under the law is unique in many respects." *Bellotti v. Baird,* 443 U.S. 622, 633, 99 S.Ct. 3035, 3043, 61 L.Ed.2d 797, 807, *reh'g denied,* 444 U.S. 887, 100 S.Ct. 185, 62 L.Ed.2d 121 (1979). Indeed, the Supreme Court has "sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights." *New York v. Ferber,* 458 U.S. 747, 757, 102 S.Ct. 3348, 3354, 73 L.Ed.2d 1113, 1122 (1982).

The state's compelling interest in promoting the welfare of children provides a powerful justification for disallowing a mistake-of-age defense to statutory rape.[11] "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Ferber,* 458 U.S. at 757, 102 S.Ct. at 3355, 73 L.Ed.2d at 1123. The case law testing the constitutionality of strict liability statutory rape laws is unanimous in recognizing the significance of the potential harm caused by sexual activity involving children,

---

**11.** Because we find that the interest served by the statutory rape statute—the protection of children—is a compelling interest, we need not decide whether this or any other strict liability statute could be upheld if the state interest is less than compelling.

even with their consent.[12]  These risks involve potential physical harm, including the risk of venereal diseases, especially the HIV virus, trauma, and even permanent damage to a child's organs.  Statutory rape laws may help prevent pregnancies, which carry "significant social, medical, and economic consequences for both the mother and her child, and the State." *Michael M. v. Sonoma County Superior Court*, 450 U.S. 464, 470, 101 S.Ct. 1200, 1205, 67 L.Ed.2d 437, 443 (1981)(footnote omitted).

Perhaps most significantly, an adult who engages in sexual activity with a child may cause the child serious psychological damage, regardless of the child's maturity or lack of chastity. Since the adult will almost always be more physically mature and experienced in sexual matters, the risk of sexual exploitation is significant.  Moreover, the effects on children of sexual exploitation often follow the child into adulthood, with societal

---

**12.**  We observed in *Garnett* that the traditional view of statutory rape as a strict liability crime is that such laws are designed to "protect young persons from the dangers of sexual exploitation by adults, loss of chastity, physical injury, and, in the case of girls, pregnancy."  332 Md. at 587, 632 A.2d at 805.  This observation is consistent with that of other courts which have considered the state's interest in holding those who engage in sexual conduct with minors strictly liable.  *See, e.g., Jones v. State*, 640 So.2d 1084, 1086 (Fla.1994)(" '[A]ny type of sexual conduct involving a child constitutes an intrusion upon the rights of that child, whether or not the child consents ... [S]ociety has a compelling interest in intervening to stop such misconduct.' ")(quoting *Schmitt v. State*, 590 So.2d 404, 410–11 (Fla.1991), *cert. denied*, 503 U.S. 964, 112 S.Ct. 1572, 118 L.Ed.2d 216 (1992)); *Ransom*, 942 F.2d at 777 ("[The statutory rape law] protects children from sexual abuse by placing the risk of mistake as to a child's age on an older, more mature person who chooses to engage in sexual activity with one who may be young enough to fall within the statute's purview.") (Citation omitted); *Commonwealth v. Robinson*, 497 Pa. 49, 438 A.2d 964, 966 (Pa.1981), *appeal dismissed*, 457 U.S. 1101, 102 S.Ct. 2898, 73 L.Ed.2d 1310 (1982)("The primary consideration in prohibiting unlawful, consensual intercourse with an underage female has been traditionally attributed to the legislative desire to protect those who are too unsophisticated to protect themselves."); *People v. Gonzales*, 148 Misc.2d 973, 561 N.Y.S.2d 358, 361–62 (Co.Ct.1990)("[I]t is proper for the state to consider the prospects of transmission of venereal disease, especially the HIV virus, trauma and permanent damage which may be caused to physical structures such as the anus, and the exploitation and sexual abuse of our youth.").

consequences as well. As the New Jersey Supreme Court has recognized:

"Sexual assault takes a heavy toll on its victims, particularly on children. Recent research indicates that a number of psychosocial problems—including chronic depression and anxiety, isolation and poor social adjustment, substance abuse, suicidal behavior, and involvement in physically or sexually abusive relationships as either aggressor or victim—are more common among adults molested as children than among those with no such childhood experiences. Victims of sexual abuse can suffer an impaired ability to critically evaluate the motives and behavior of others, making them more vulnerable to revictimization. An especially disturbing finding about child sexual abuse is its strong intergenerational pattern; in particular, due to the psychological impact of their own abuse, sexually abused boys have been found to be more likely than non-abused boys to turn into offenders against the next generation of children, and sexually abused girls are more likely to become mothers of children who are abused. And studies show that adult male aggressive behavior, particularly sexual aggression, is associated with the trauma of childhood sexual abuse. Thus, apart from the substantial personal trauma caused to the victims of such crimes, sexual crimes against children exact heavy social costs as well."

*Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367, 375 (N.J.1995)(quoting Brief for the United States at 5–8 (citations omitted)).

The state's overwhelming interest in protecting children from these risks outweighs any interest that the individual may have in engaging in sexual relations with children near the age of consent. Although we need not reach the issue, it has been held that a person has no constitutional right to engage in sexual intercourse, at least outside of marriage, and sexual conduct frequently is subject to state regulation. *Cf. Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), *reh'g denied,* 478 U.S. 1039, 107 S.Ct. 29, 92 L.Ed.2d 779 (1986)(upholding Georgia statute criminalizing

the act of sodomy). Many states still criminalize fornication [13] and other sexual behavior.[14] Furthermore, given the substantial risks of sexual abuse and exploitation of children, the public policies behind statutory rape laws appear to be significantly stronger than, to take one example, the public policy of promoting "the integrity of family life" through the crime of bigamy, for which the defendants in *Williams* were constitutionally imprisoned despite the absence of any criminal intent. *Williams,* 325 U.S. at 238, 65 S.Ct. at 1099, 89 L.Ed. at 1586. Statutory rape laws may be deemed necessary by legislators to protect those whose "immaturity and innocence prevents them from appreciating the full magnitude and consequences of their conduct." *People v. Cash,* 419 Mich. 230, 351 N.W.2d 822, 826–27 (Mich.1984).

█ The crime of statutory rape also does not implicate other constitutional rights that heighten our level of inquiry. If, for example, First Amendment rights are implicated by a strict liability statute, we may be more likely to find the statute in violation of due process requirements. *See Smith,* 361 U.S. at 153, 80 S.Ct. at 218, 4 L.Ed.2d at 211 (interpreting an obscenity statute to include a mens rea requirement in order to avoid "impos[ing] a restriction upon the distribution of constitutionally protected as well as obscene literature"); *X–Citement Video,* 513 U.S. at 78, 115 S.Ct. at 472, 130 L.Ed.2d at 385 (interpreting the term "knowingly" in a federal statute regulating child pornography to include knowledge that the materials involve minors). The instant case does not implicate the First Amendment; rather, the statute at issue

---

**13.** *See, e.g.,* D.C.Code Ann. § 22–1002 (1996); Ga.Code Ann. § 16–6–18 (1996); Idaho Code § 18–6603 (1987); Ill.Ann.Stat., chapter 720 ¶ 5/11–8 (Smith–Hurd 1993); Mass. Gen. Laws Ann. ch. 272, § 18 (West 1990); Minn.Stat. Ann. § 609.34 (West 1987); Miss.Code Ann. § 97–29–1 (1994); N.C. Gen.Stat. § 14–184 (1993); S.C.Code Ann. §§ 16–15–60 (Law.Co-op.1985); Utah Code Ann. § 76–7–104 (1995); Va.Code Ann. § 18.2–344 (Michie 1996); W. Va.Code § 61–8–3 (1992).

**14.** The Maryland legislature has enacted other laws to further the policy goals of Art. 27, § 463. *See* § 416B (prohibiting the selling or the offering to sell to minors sexually explicit materials); § 416C (criminalizing the act of exhibiting sexually explicit motion pictures to minors).

involves constitutionally permissible regulation of sexual conduct.

2.

The legislature's decision to disallow a mistake-of-age defense to statutory rape furthers its interest in protecting children in ways that may not be accomplished if the law were to allow such a defense. Precisely because § 463(a)(1) eliminates the need for the state to prove that the potential offender knew or was unreasonable in the failure to recognize that the victim was under age 14, the statute "may reasonably be expected to have some deterrent effect." *United States v. Ransom,* 942 F.2d 775, 777 (1991), *cert. denied,* 502 U.S. 1042, 112 S.Ct. 897, 116 L.Ed.2d 799 (1992); *see also People v. Gonzales,* 148 Misc.2d 973, 561 N.Y.S.2d 358, 361 (Co.Ct. 1990)("[T]he criminal consequences of violating the statutory age limit under present law deter sexual contact between older, more sophisticated adults, and often naive minors.").

Deterrence is accomplished by placing the risk of an error in judgment as to a potential sex partner's age with the potential offender. Moreover, even though a criminal statute that dispenses with any mens rea requirement could unconstitutionally infringe upon innocent conduct, *cf. Liparota v. United States,* 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434, 440 (1985)(construing statute to include mens rea element "is particularly appropriate where . . . to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct"), we believe that the statute in question here does not intrude upon innocent conduct to the extent of outweighing the state's interest.[15] Where doubt

---

15. Maryland's statutory rape law is less likely than a number of other state statutes to reach noncriminal sexual conduct since the victim in Maryland must be under 14 years of age, while other states have adopted older ages of consent. These other statutes have withstood constitutional challenges despite their greater potential to affect noncriminal sexual conduct. *See, e.g., State v. Barlow,* 160 Vt. 527, 630 A.2d 1299 (Vt.1993)(under age 16); *Campbell,* 239 Neb. 14, 473 N.W.2d 420 (under age 16); *Brooks,* 841 F.2d 268 (under age 16); *Miller,* 385

exists as to a potential sexual partner's age, abstention from intercourse is a readily available solution:

> "The defendant in a statutory rape case does not lack the ability to comply with the law; he must simply abstain from sexual intercourse when there is even the remotest possibility that his partner is below the statutory age. Moreover, unlike the defendant who reasonably believes his wife to be dead, remarries, and is convicted of bigamy, the man who contemplates intercourse with a partner of indeterminate age can resolve doubts in favor of compliance with the law without sacrificing behavior that society considers desirable.... [T]he maximization of deterrence for socially undesirable behavior may sometimes require the deterrence of socially neutral conduct as well."

*Recent Cases,* 78 HARV. L.REV. 1257, 1258–59 (1965).

The state's interest in protecting children would be significantly undermined if we were to find the statute unconstitutional. We have previously recognized that the state legislature's interest in furthering its objective most effectively helps to justify a strict liability statute. In *Ford v. State,* 85 Md. 465, 473, 37 A. 172, 173 (1897), we considered a former Maryland statute that made it a crime for one to possess "any book, list, slip or record of the numbers drawn in any lottery." The statute provided for a fine of $1000 and/or up to one year of imprisonment. The defendant argued that his conviction under the statute was unconstitutional because it did not allow him to present evidence showing that he had no knowledge that the papers in his possession were subject to the statute. We acknowledged that the papers, which we deemed "utterly unintelligible to any one not learned in the business," *Ford,* 85 Md. at 477, 37 A. at 174, may not give notice to an innocent person of their illegal character, but we rejected the constitutional argument, concluding that the statute's lack of a mens

---

Mass. 521, 432 N.E.2d 463 (under age 16); *Goodrow,* 119 N.H. 483, 403 A.2d 864 (under age 16); *State v. Drake,* 219 N.W.2d 492 (Iowa 1974) (male over 25 and female under 17); *Nelson,* 484 F.2d 1034 (under age 16).

rea requirement was consistent with the Due Process Clause. We noted the state's strong interest in thwarting the growth of the (then) illegal lottery business, and observed that "the statute has made the mere possession of the articles a crime because that is the most effectual way to break up the lottery business." *Ford*, 85 Md. at 480, 37 A. at 175.

Similarly, the statutory rape statute effectively furthers a significant state interest. Aside from deterring sexual activity with children, by disallowing a mistake-of-age defense, the state avoids the risk that the inevitably emotional statutory rape trial will focus unjustifiably on the child's appearance and level of maturity. "The obvious problem is that because early adolescents tend to grow at a rapid rate, by the time of trial a relatively undeveloped young girl or boy may have transformed into a young woman or man." *Cash*, 351 N.W.2d at 828. Defendant's assertion that he had made a reasonable mistake regarding the victim's age is best considered as a mitigating circumstance at sentencing, which is what occurred in this case. *See id.*

### D.

Appellant contends that § 463(a)(3) unconstitutionally creates an irrebuttable presumption that the victim's mental state is irrelevant and that children under age 14 are incapable of consenting to sexual intercourse. We disagree.

First, we note that § 463(a)(3) simply prohibits sexual intercourse with one who is "under 14 years of age" when the person "performing the act is at least four years older than the victim." Intent is simply not relevant to the charges. As the Iowa Supreme Court has concluded, "[h]ere we are not dealing with a presumption (or, more correctly, inference) at all. The statute is not concerned with presumptions or inferences. Rather it flatly prohibits the act defendant committed." *State v. Drake*, 219 N.W.2d 492, 496 (Iowa 1974). *See also State v. Hill*, 170 N.J.Super. 485, 406 A.2d 1334, 1336 (N.J.Super.Ct.App.Div.1979)("Presumption does not play any part in the violation of the statute."). For the

reasons stated above, the legislature may constitutionally prohibit sexual intercourse with a child below age 14 in order to protect the child's physical and mental health and welfare. Since Maryland's statutory rape statute directly prohibits vaginal intercourse with children below age 14 without regard to the minor's ability to consent, it does not utilize any presumption that unconstitutionally burdens the criminal defendant.

Second and relatedly, under the statutory scheme of § 463(a)(3), age is not used to determine any element of the crime beyond the age itself. Thus, it is distinguishable from the Supreme Court's decisions in *LaFleur, Vlandis,* and *Stanley,* as well as our decision in *Mahoney. See* Part II, *supra.* In each of these cases, the provision held to violate due process took one fact and used it to justify a separate, factual conclusion, and, moreover, the fact presumed bore little or no relation to the objective of the law. In *LaFleur,* the public school policies took the fact of pregnancy and presumed that pregnancy made women physically unfit for classroom teaching. 414 U.S. at 647, 94 S.Ct. at 799, 39 L.Ed.2d at 64. The statute in question in *Vlandis* presumed that one who applied to a state school while living out-of-state was a non-resident regardless of facts suggesting otherwise, for as long as that individual remained a student. 412 U.S. at 449–50, 93 S.Ct. at 2235, 37 L.Ed.2d at 70. In *Stanley,* the statute conclusively presumed that all unmarried fathers are unqualified to raise their children. 405 U.S. at 650, 92 S.Ct. at 1214, 31 L.Ed.2d at 558. In *Mahoney,* the regulation invalidated specifically stated that presence of drugs in saliva or urine "shall be conclusive evidence" that the trainer had knowledge or was careless in allowing the horse to be drugged. 187 Md. at 83–84, 48 A.2d at 602.

In sharp contrast, § 463(a)(3) does not presume that anyone engaging in sexual intercourse with one under the age of 14 intended to do so, or that the victim is incapable of consenting; rather, the statute protects children from sexual conduct, regardless of whether the defendant intended to

engage in the prohibited conduct with one under age 14 and whether the victim purported to consent. Unlike the statutes stricken down as unconstitutional, § 463(a)(3) does not take as one fact (pregnancy, an application for admission when living out-of-state, the unmarried father, or a positive drug test) and use that fact to arrive at a separate conclusion (fitness for classroom teaching, resident status, fitness for raising children, or the administering of drugs to horses with knowledge or carelessness). In other words, § 463(a)(3) does not require intent to engage in intercourse with one under 14 years old and then presume that intent simply because of the victim's age; nor does it prohibit sexual intercourse without consent and then presume that children under age 14 are incapable of consenting. As a result, the irrebuttable presumption doctrine does not apply.

Finally, even if we were to agree that the statute creates an irrebuttable presumption that children age 13 and under are incapable of making an informed decision about whether to consent to sexual intercourse, the nexus between the presumption and the state's interest in protecting children is sufficient enough to ameliorate any due process concerns.[16] *See* Rita Eidson, *The Constitutionality of Statutory Rape Laws*, 27 U.C.L.A. L.Rev. 757, 811 (1980) (concluding that the irrebuttable presumption doctrine may apply only to statutory rape laws "with a high age of consent," *i.e.*, age 16). Basing

---

**16.** New York's statutory rape law explicitly incorporates an irrebuttable presumption, which was nevertheless upheld in *People v. Gonzales, supra.* The statute declared that it "is an element ... that the sexual act was committed without consent of the victim," and it further provided that "[a] person is deemed incapable of consent when he is: (a) less than seventeen years old." 561 N.Y.S.2d at 359–60. The defendant argued that the irrebuttable presumption that children under age 17 cannot consent "unconstitutionally presumes an element of the crime which the People would otherwise be under an obligation to prove by proof beyond a reasonable doubt." 561 N.Y.S.2d at 360. The court determined that the presumption created by the statute "is equivalent to a substantive rule of law expressed in terms of rules of evidence.... Lack of true consent of those under seventeen is not an element of the substantive crime." 561 N.Y.S.2d at 362 (citations omitted).

one's ability to consent to sexual intercourse on the individual's meeting the age of 14 is not "wholly unrelated" to the state's objective of protecting minor children, and it is hard to imagine when the presumption would not "operate to effectuate the State's asserted interest" in protecting children from sexual abuse, exploitation and early pregnancy. *Vlandis,* 412 U.S. at 449, 93 S.Ct. at 2235, 37 L.Ed.2d at 69–70. Therefore, even if the irrebuttable presumption doctrine would apply, we could not conclude that § 463(a)(3) is "so arbitrary as to constitute a denial of due process of law." *Vlandis,* 412 U.S. at 450, 93 S.Ct. at 2235, 37 L.Ed.2d at 70.

## IV.

In sum, we find no constitutional barriers to placing on individuals engaging in sexual intercourse the risk that their sexual partner is below age 14, regardless of the reasonableness of their belief otherwise. The state has an unparalleled interest in protecting children from the potentially devastating effects of sexual abuse and exploitation, and the statutory rape statute furthers that interest. Though it is not without limits, establishing the age at which the statutory rape law applies is a task for the legislature, not the courts.[17] If the legislature so decides, it can amend § 463(a)(3) to allow for a mistake-of-age defense or it may lower the age at which the statute applies the strict liability standard.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

**17.** *See Robinson,* 438 A.2d at 967 n. 5 (concluding that, although the Model Penal Code allows a mistake-of-age defense if the victim is ten or older, "certainly the legislature may, consistently with considerations of due process, determine as a matter of public policy that the still tender age of fourteen is appropriate."); *In re Interest of J.D.G.,* 498 S.W.2d 786, 792 (Mo.1973) ("The selection of the female age factor in a statutory rape statute is basically a legislative function."); *Drake,* 219 N.W.2d at 495 (same).

ELDRIDGE, J., concurs in the result only.

BELL, C.J. and CATHELL, J. dissent.

ELDRIDGE, Judge, concurring.

Although I concur with the Court's result, I do not join the majority opinion.

In *Garnett v. State,* 332 Md. 571, 584–585, 632 A.2d 797, 803–804 (1993), this Court held "that Maryland's second degree rape statute defines a strict liability offense that does not require the State to prove *mens rea . . . ."* The *Garnett* Court went on to state that Art. 27, § 463(a)(3), "makes no reference to the actor's knowledge, belief, or other state of mind" and that the General Assembly intended "this silence as to *mens rea . . . ."* 332 Md. at 585, 632 A.2d at 804. The *Garnett* opinion concluded that "an[y] element of *mens rea* " would have to be enacted by the General Assembly. 332 Md. at 588, 632 A.2d at 805.

In a dissenting opinion in *Garnett,* 332 Md. at 588–592, 632 A.2d at 805–807, I disagreed with the Court's view "that the statute contains no *mens rea* requirement at all." 332 Md. at 589, 632 A.2d at 806. Although I agreed "that an ordinary defendant's mistake about the age of his or her sexual partner is not a defense to a prosecution under § 463(a)(3)," I disagreed with the Court's conclusion that § 463(a)(3) enacted a "strict liability" offense "where criminal 'liability is imposed regardless of the defendant's state of mind.' " *Ibid.,* quoting *Dawkins v. State,* 313 Md. 638, 645, 547 A.2d 1041, 1044 (1988). I went on to set forth my view of the *mens rea* requirement in § 463(a)(3) as follows (332 Md. at 590–592, 632 A.2d at 806–807):

"In the typical situation involving an older person's engaging in consensual sexual activities with a teenager below the age of consent, and the scenario which the General Assembly likely contemplated when it enacted §§ 463(a)(3), 464A(a)(3), 464B(a)(3), 464C(a)(2), and 464C(a)(3), the defendant knows and intends that he or she is engaging in sexual activity with a young person. In addition, the defendant

knows that the activity is regarded as immoral and/or improper by large segments of society. Moreover, the defendant is aware that 'consent' by persons who are too young is ineffective. Although in a particular case the defendant may honestly but mistakenly believe, because of representations or appearances, that the other person is above the age of consent, the ordinary defendant in such case is or ought to be aware that there is a risk that the young person is not above the age of consent. As the majority opinion points out, 'the traditional view [is] that those who engage in sex with young persons do so at their peril, assuming the risk that their partners are underage . . . .' It seems to me that the above-mentioned knowledge factors, and particularly the mental ability to appreciate that one is taking a risk, constitute the *mens rea* of the offenses defined by §§ 463(a)(3), 464A(a)(3), 464B(a)(3), 464C(a)(2) and 464C(a)(3). In enacting these provisions, the General Assembly assumed that a defendant is able to appreciate the risk involved by intentionally and knowingly engaging in sexual activities with a young person. There is no indication that the General Assembly intended that criminal liability attach to one who, because of his or her mental impairment, was unable to appreciate that risk.

"It is unreasonable to assume that the Legislature intended for one to be convicted under § 463(a)(3), or under any of the other statutes proscribing sexual activity with underage persons, regardless of his or her mental state. Suppose, for example, that Raymond Garnett had not had an I.Q. of 52, but rather, had been more severely mentally retarded as was the young woman involved in *Wentzel v. Montgomery Gen. Hosp.*, 293 Md. 685, 447 A.2d 1244, *cert. denied*, 459 U.S. 1147, 103 S.Ct. 790, 74 L.Ed.2d 995 (1983). The mentally retarded person in *Wentzel* had an I.Q. of 25–30, was physiologically capable of bearing a child, but was unable to comprehend the act of sexual intercourse, or even to understand the difference between the sexes. If someone so disabled, having reached Raymond's chronological age, then had 'consensual' sexual intercourse with a person

younger than fourteen years of age, I do not believe that he or she would have violated Art. 27, § 463(a)(3). Under the view that §§ 463(a)(3), 464A(a)(3), 464B(a)(3), etc., define pure strict liability offenses without any regard for the defendant's mental state, presumably a 20 year old, who passes out because of drinking too many alcoholic beverages, would be guilty of a sexual offense if a 13 year old engages in various sexual activities with the 20 year old while the latter is unconscious. I cannot imagine that the General Assembly intended any such result."

I find the majority's opinion today somewhat confusing. Thus, in some portions of the opinion, the majority seems to be reaffirming the Court's holding in *Garnett*. The majority refers to § 463(a)(3) as a "strict liability" offense (352 Md. at 681, 724 A.2d at 52), and indicates that the statute "dispenses with any mens rea requirement ..." (352 Md. at 685, 724 A.2d at 54). Other portions of the majority opinion, however, appear to reflect the views set forth in my dissenting opinion in the *Garnett* case. For example, the majority states that "the sexual intercourse proscribed by § 463(a)(3) ... involves conscious activity which gives rise to circumstances that place a reasonable person on notice of potential illegality." 352 Md. at 680, 724 A.2d at 51. The majority refers to the defendant being "on notice of the potential risks of miscalculating the victim's age." *Ibid*. The majority also suggests that a defendant violating § 463(a)(3) would not be " 'morally blameless.' " 352 Md. at 680–81, 724 A.2d at 52.

If the majority today is modifying the strict liability holding of *Garnett*, then I applaud the majority's action. If, on the other hand, the majority is reaffirming the holding in *Garnett*, I continue to disagree.

I would affirm the judgment of the circuit court for the reasons set forth in my dissenting opinion in *Garnett*.

BELL, Chief Judge, dissenting joined by CATHELL, J.

In *Garnett v. State*, 332 Md. 571, 632 A.2d 797 (1993), this Court held that Maryland Code (1957, 1996 Repl.Vol.), Art. 27,

§ 463(a)(3),[1] the statutory rape law, is a strict liability statute. The majority of the Court stated in that regard:

"We think it sufficiently clear, however, that Maryland's second degree rape statute defines a strict liability offense · that does not require the State to prove mens rea; it makes no allowance for a mistake-of-age defense. The plain language of § 463, viewed in its entirety, and the legislative history of its creation lead to this conclusion."

*Id.* at 584–85, 632 A.2d at 803–04. I dissented from that decision, concluding:

"I do not believe, however, that the General Assembly, in every case, whatever the nature of the crime and no matter how harsh the potential penalty, can subject a defendant to strict criminal liability. To hold, *as a matter of law,* that section 463(a)(3) does not require the State to prove that a defendant possessed the necessary mental state to commit the crime, i.e. knowingly engaged in sexual relations with a female under 14, or that the defendant may not litigate that issue in defense, 'offends a principle of justice so rooted in the traditions of conscience of our people as to be ranked as fundamental' and is, therefore, inconsistent with due process. *See United States v. Ransom,* 942 F.2d 775, 776–77 (10th Cir.1991), *cert. denied,* 502 U.S. 1042, 112 S.Ct. 897, 116 L.Ed.2d 799 (1992), quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674, 677 (1934)."

*Id.* at 593–94, 632 A.2d at 808 (Bell, J., dissenting) (footnote omitted, emphasis in original). I also expressed, at some length, the reasons I reached that conclusion, namely, that a culpable mental state, often referred to as *mens rea,* or intent, is, and continues to be, as it long has been, an essential element of a criminal offense, *id.* at 595–98, 632 A.2d at 808–10

---

1. That provision reads:

"(a) Elements of offense.—A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:

\* \* \*

(3) Who is under 14 years of age and the person performing the act is at least four years older than the victim."

(Bell, J., dissenting), that statutory rape, not being a public welfare offense, can not be justified as a strict liability offense on the basis of either of the two theories, "lesser legal wrong" or "moral wrong," that historically has underlain such treatment, *id.* at 601–05, 632 A.2d at 812–14 (Bell, J., dissenting), and that mistake of fact negates the mental state required to establish the crime of statutory rape. *Id.* at 605–11, 632 A.2d at 814–17 (Bell, J., dissenting). And, although the constitutional issue was not presented in that case, I addressed, again at some length, what I perceived to be the constitutional limitations on strict criminal liability. *See id.* at 611–26, 632 A.2d at 817–24 (Bell, J., dissenting). After discussing *State v. Guest,* 583 P.2d 836, 839 (Alaska, 1978), in which the Supreme Court of Alaska recognized mistake of fact as a defense in statutory rape and opined, "where the particular statute is not a public welfare type of offense, either a requirement of criminal intent must be read into the statute or it must be found unconstitutional," I concluded:

"the prosecution of statutory rape in Maryland necessarily brings into conflict the State's interests in protecting minors and defendants' due process rights because section 463(a)(3) operates 'to exclude elements of knowledge and diligence from its definition,'" *Ransom,* 942 F.2d at 776, quoting *Lambert,* 355 U.S. at 228, 78 S.Ct. at 242, 2 L.Ed.2d at 231, and, thus, removes reasonable ignorance of the girl's age and consequent lack of criminal intent as a defense. The failure of section 463(a)(3) to require proof of a culpable mental state conflicts both with the substantive due process ideal requiring that defendants possess some level of fault for a criminal conviction of statutory rape and the procedural due process ideal requiring that the prosecution overcome the presumption of innocence by proof of the defendant's guilt beyond a reasonable doubt. Notwithstanding the maxim that criminal statutes dispensing with the intent requirement and criminal offenses requiring no mens rea have a "generally disfavored status," the rationale of parts V and VI of the majority opinion is that the legislature has absolute authority to create strict liability crimes. For the

reasons reviewed, I do not agree. On the contrary, I believe that due process both under the Fourteenth Amendment and under the Declaration of Rights, precludes strict criminal liability for statutory rape. Interpreting section 463(a)(3) as the majority does has the effect of largely relieving the State of its burden of proof and burden of persuasion. By making the defendant's intent, and, hence, blameworthiness, irrelevant, the Legislature has made inevitable, the petitioner's conviction. Moreover, upon conviction of the felony offense of statutory rape under section 463(a)(3), in addition to a substantial penalty of up to 20 years imprisonment, a defendant's reputation will be gravely besmirched. Where there is no issue as to sexual contact, which is more likely than not to be the case in statutory rape prosecutions, proof of the prosecutrix's age is not only proof of the defendant's guilt, it is absolutely dispositive of it and, at the same time, it is fatal to the only defense the defendant would otherwise have. So interpreted, section 463(a)(3) not only destroys absolutely the concept of fault, but it renders meaningless, in the statutory rape context, the presumption of innocence and the right to due process."

See id. at 625–26, 632 A.2d at 824 (Bell, J., dissenting).

Today, the majority holds, "Appellant's rights to due process under the Maryland and United States Constitutions were not violated when, upon being charged with statutory rape, the trial court prevented Appellant from presenting his defense that he reasonably believed the victim was above 13 years of age." 352 Md. 663, 667, 724 A.2d 43, 45 (1998). Thus, the Court answers the question that I anticipated in *Garnett.* And, as I did in *Garnett,* I dissent. Accordingly, what I said in my dissenting opinion, in *Garnett,* is directly relevant to the case *sub judice,* and I commend and urge its reading and consideration. To it, I also add the following.

## I.

The Fourteenth Amendment of the United States Constitution and the Maryland Declaration of Rights guarantee each

individual due process of law. Due Process protects those liberties that are "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674, 677 (1934). As Justice Chase observed more than 100 years ago:

> "There are acts which the Federal, or State, Legi[s]lature cannot do, without exceeding their authority. There are certain vital principles in our free Republican governments, which will determine and overrule an apparent and flagrant abuse of legislative power, as to authorize manifest injustice by positive law; or to take away that security for personal liberty, or private property, for the protection whereof the government was established."

*Calder v. Bull,* 3 Dall. 386, 3 U.S. 386, 388, 1 L.Ed. 648, 649 (1798). Due process rights, which are integral to our republican form of government, protect all citizens, including the criminal accused, from unfair procedures and from deprivations of substantive rights.

### a.

The requisites of procedural due process are satisfied only when the accused is afforded both notice and a fair opportunity to be heard. *See Goss v. Lopez,* 419 U.S. 565, 577, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725, 737 (1974); (quoting *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)); *Reed v. Mayor and City Council of Baltimore,* 323 Md. 175, 183–84, 592 A.2d 173, 177 (1991); *Pitsenberger v. Pitsenberger,* 287 Md. 20, 30, 410 A.2d 1052, 1058 (1980). In addition, a court must ponder three competing interests:

> "[F]irst the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative

burdens that the additional or substitute procedural require-
ment would entail."

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47
L.Ed.2d 18, 33 (1976); *Hare v. Motor Vehicle Administration,*
326 Md. 296, 303, 604 A.2d 914, 917 (1992); *Brosan v. Coch-
ran,* 307 Md. 662, 671–72, 516 A.2d 970, 975 (1986).

In this case, the majority concludes the mandates of proce-
dural due process were satisfied, because the appellant was
given sufficient notice of what actions constitute statutory
rape. *See* 352 Md. 663, 679–80, 724 A.2d 43, 51–52 (1998).
The majority ignores the real issue. Even if the appellant
were on notice that having sexual relations with someone
below the consensual age constitutes statutory rape, this does
not mean, and there is no evidence to suggest, that the
appellant knew that the particular female with whom he was
having sexual relations was underage. As the United States
Supreme Court observed in *Staples v. United States,* 511 U.S.
600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), notice means
more than simply cursory knowledge of the law.

At issue in *Staples* was Art. 26, U.S.C. § 5861(d), of the
National Firearms Act, which criminalizes possession of an
unregistered firearm,[2] imposing a sentence of up to ten years
in prison, but is silent as to *mens rea. See* 511 U.S. at 603–06,
114 S.Ct. at 1795–97, 128 L.Ed.2d at 614–16. The defendant
in *Staples,* had possession of an AR–15 assault rifle, when his
home was searched by the Bureau of Alcohol, Tobacco &

---

**2.** Firearm is defined in § 5845(a) as "(1) a shotgun having a barrel or
barrels of less than 18 inches in length; (2) a weapon made from a
shotgun if such weapon as modified has an overall length of less than
26 inches or a barrel or barrels of less than 18 inches in length.

\* \* \*

"(b) Machinegun. The term 'machinegun' means any weapon which
shoots, is designed to shoot, or can be readily restored ·to shoot,
automatically more than one shot, without manual reloading, by a
single function of the trigger. The term shall also include the frame or
receiver of any such weapon, any part designed and intended solely and
exclusively, or combination of parts designed and intended, for use in
converting a weapon into a machinegun, and any combination of parts
from which a machinegun can be assembled if such parts are in the
possession or under the control of a person."

Firearms.[3] *Id.* at 603, 114 S.Ct. at 1795–96, 128 L.Ed.2d at 614. The defendant testified that the gun had never fired automatically, when in his possession. *Id.* at 603, 114 S.Ct. at 1796, 128 L.Ed.2d at 614–15. He requested a jury instruction that the Government had to prove "'he knew that the gun would fire fully automatically,'" but that request was denied by the district court, and he was convicted and sentenced to 5 years probation and a $5,000 fine. *See id.* at 603–04, 114 S.Ct. at 1796, 128 L.Ed.2d at 615. Reversing the district court, the United States Supreme Court concluded that the government bore the burden of proving a defendant's knowledge as to the nature of the weapon beyond a reasonable doubt, *id.* at 619, 114 S.Ct. at 1804, 128 L.Ed.2d at 624, stating that it was "reluctant to impute [strict liability] to Congress where, as here, it would mean easing the path to convicting persons whose conduct would not even alert them to the probability of strict regulation ...." *See id.* at 615–16, 114 S.Ct. at 1802, 128 L.Ed.2d at 622–23. The Court also noted that "punishing a violation as a felony is simply incompatible with the theory of the public welfare offense," *Id.* at 618, 114 S.Ct. at 1804, 128 L.Ed.2d at 623–24, and reiterated its long line of cases holding that a defendant must have a guilty mind before being found guilty. *See* 511 U.S. at 604–08, 114 S.Ct. at 1796–98, 128 L.Ed.2d at 615–18.

I addressed the same issue and drew the same conclusion in my dissenting opinion in *Garnett:*

> "A defendant who has knowledge that a victim has consented, in fact, to sexual relations, whether the consent is effective or not, is not thereby placed on notice as to the victim's age. Knowledge of consent simply does not equate with knowledge of age, just as intent to engage in sexual relations does not reveal, without more, with whom. Moreover, it is not a crime to engage in sexual relations with a

---

**3.** This gun is the civilian equivalent of the military M–16 rifle, but unless it has been modified it has a metal stop, which prevents it from firing repeatedly. The metal stop on the defendants' gun had been filed away and the gun could be fired repeatedly. *See Staples,* 511 U.S. at 603, 114 S.Ct. at 1796, 128 L.Ed.2d at 614–15.

minor who is at least 16 years old; it may be morally wrong, in the minds of most Americans, but it is not a crime. It is only a crime if the defendant engages in such relations with a minor under a specified age, i.e., 14, as in section 463(a)(3), or 14 or 15, as in section 464C. But even when the act engaged in is necessarily a crime, e.g. possession of contraband, knowledge of the illegality—that the contraband is knowingly possessed—is still required. *See Dawkins v. State,* 313 Md. 638, 547 A.2d 1041 (1988). Consequently, where the activity would be legal or, at least, not illegal, but for the ages of the participants, at the very least, the defendant's knowledge of the victim's age must be proven. Otherwise, a defendant who does not know he is acting illegally could be convicted."

332 Md. at 622–23, 632 A.2d at 822–23 (Bell, J., dissenting). This observation is most relevant to the case *sub judice,* where even the trial court recognized that the defendant's knowledge of his partner's age was not at all clear:

"[I]n many instances...[a] 13 year old can look like a 13 year old or 12 year old; in other instances, a 13 year old can look like an 18 year old. So, I have no way of knowing whether this victim appeared to be older than she actually was. But I can only go by her statement to the police and to the Defendant that she was 16 years old."

The majority also overlooks the second prong of the procedural due process test. *See* 352 Md. at 679–80, 724 A.2d at 51–52. The appellant was not given an opportunity to present a defense. By ignoring this fact, the Court apparently forgets that " '[t]he critical issue in a statutory rape case is 'the age of the rape victim...,' which serves two related, but distinct purposes: (1) it establishes the victim's capacity to consent and (2) it represents notice to a defendant of proscribed conduct." *See Garnett,* 332 Md. at 621, 632 A.2d at 822 (Bell, J., dissenting). As one court has astutely observed, where as here, the "outcome is determined not only by the child's age, but by the relative age of the defendant ...[and][w]hen the law requires a mathematical formula for its application, [one] cannot say that being provided the wrong numbers is immate-

rial." *Perez v. State,* 111 N.M. 160, 803 P.2d 249, 251 (N.M. 1990). In fact, it is the child's age and the defendant's age, which lead to prosecution for actions that would otherwise go unpunished.[4]

By denying the appellant a fair opportunity to present his defense of lack of knowledge, and construing the statutory rape statute as a strict liability statute, the Court has permitted, and made the appellant the victim of, an irrebuttable presumption.[5] This can not pass constitutional scrutiny.

b.

Substantive due process functions to limit both the state's substantive power to regulate citizens' lives and to restrict the state from unconstitutionally denying liberty. *See generally* Laurence H. Tribe, *American Constitutional Law* § 15, at 1302–1435 (2d ed.1988). When the state deprives a person of life, liberty, or property it must have at least a rational basis, but when it infringes upon a fundamental right, it must demonstrate a compelling governmental interest and a narrowly tailored means of protecting only that interest. *See Zablocki v. Redhail,* 434 U.S. 374, 388, 98 S.Ct. 673, 682, 54 L.Ed.2d 618, 631 (1978); *Hill v. Fitzgerald,* 304 Md. 689, 701, 501 A.2d 27, 33 (1985); *Attorney General v. Johnson,* 282 Md. 274, 310, 385 A.2d 57, 78 (1978).

Assessing whether the State's interest outweighs the appellant's rights involves two competing considerations. The first is the nature of the interests involved. In other words, with respect to the defendant, it must be determined whether the right being infringed upon is "rooted so deep in the tradition and conscience of our people as to be ranked as fundamental," *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674, 677 (1934), and as to the State, whether its

---

**4.** As I pointed out in *Garnett,* fornication is not a crime in Maryland. *See* 332 Md. at 602–03, 632 A.2d at 812 (Bell, J., dissenting).

**5.** For a discussion of irrebuttable presumptions, as violative of due process, see *Garnett,* 332 Md. at 616–20, 632 A.2d at 819–21 (Bell, J., dissenting).

interest is compelling. Second, the appellant's interests must be balanced against the relevant State interests. *See Youngberg v. Romeo,* 457 U.S. 307, 321, 102 S.Ct. 2452, 2461, 73 L.Ed.2d 28, 40–41 (1982).

Here, the interest the appellant seeks to vindicate is his fundamental due process right to present a defense, a right guaranteed to every criminal defendant. *See White v. State,* 324 Md. 626, 640, 598 A.2d 187, 194 (1991); *Mitchell v. State,* 320 Md. 756, 761, 580 A.2d 196, 199 (1990). This right is, "in essence, the right to a fair opportunity to defend against the State's accusations ...." *Taliaferro v. State,* 295 Md. 376, 403, 456 A.2d 29, 44 (1983) (quoting *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). Much like the rights of defendants protected by the Sixth Amendment, the right to present a defense is fundamental, in that it gives the appellant the opportunity "to offer the testimony of witnesses, and to compel their attendance, if necessary, [which] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecutions to the jury...." *Webb v. Texas,* 409 U.S. 95, 98, 93 S.Ct. 351, 353, 34 L.Ed.2d 330, 333 (1972) (quoting *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967)). It is clear, therefore, that the appellant's interest is deep rooted and serious. Indeed, the right is similar to other interests, of the defendant, that the United States Supreme Court has found to be fundamental in the criminal process. *See Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (concerning right to counsel on first appeal); *Mayer v. Chicago,* 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971) (concerning right to transcript in misdemeanor appeals); *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (concerning right to legal materials and access to courts).

The majority lists the state's interests as: promoting the physical and mental health of children, preventing the sexual exploitation and abuse of children, and preventing venereal disease and pregnancy. *See* 352 Md. at 681–85, 724 A.2d at 52–54. To be sure, these interests are compelling. Even so,

this does not vitiate the appellant's due process rights and, in any event, must be narrowly tailored.

Aside from the fact that, rather than an exploitation or abuse of one of the parties, the facts of this case reveal only two teenagers engaged in a fully consensual act, *see State v. Yanez*, 716 A.2d 759, 772 (R.I.1998) (Flanders, J., dissenting) [6], Maryland's statutory rape law, as currently formulated is not the most narrowly tailored method for addressing those concerns.

To bolster its position, the majority cites *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1985). Hardwick was charged with violating a Georgia penal statute, which criminalized sodomy.[7] *See* 478 U.S. at 187–88, 106 S.Ct. at 2842, 92 L.Ed.2d at 144. He brought an action in federal court, alleging: (1) the statute was unconstitutional in criminalizing consensual sodomy, (2) as a practicing homosexual the Georgia law placed him in imminent danger of arrest, (3) he had a fundamental Constitutional right to privacy in his own home, which encompassed the right to engage in sodomy, and (4) there was no rational basis for the law even if it did not infringe on his fundamental rights. *See id.* at 188, 195–96, 106 S.Ct. at 2842, 2846, 92 L.Ed.2d at 144, 148–49. Rejecting each argument, the Court declined to extend its fundamental rights jurisprudence as Hardwick proposed. *See id.* at 190–96, 106 S.Ct. at 2843–47, 92 L.Ed.2d at 145–49. The Court concluded that sodomy does not fall within one of the protected liberties embodied in the Bill of Rights. *See id.* at 191–92, 106 S.Ct. at 2844–45, 92 L.Ed.2d at 146–47. The Court also determined

---

**6.** Although it does not address the due process issue, this case contains an excellent and detailed discussion of why the State must prove *mens rea* in a statutory rape case.

**7.** The statute at issue in *Bowers,* stated:

"Georgia Code Ann. § 16–6–2 (1984):

(a) A person commits the offense of sodomy when he performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another...

(b) A person convicted of the offense of sodomy shall be punished by imprisonment for not less than one nor more than 20 years..."

that the Georgia law survived a rational relations review, even if it was based on the Georgia electorate's view that homosexual sodomy is "immoral and unacceptable." *See id.* at 196, 106 S.Ct. at 2846, 92 L.Ed 2d at 149.

From *Bowers,* the majority distills the following, "[t]he state's overwhelming interest in protecting children from these risks outweighs any interest the individual may have in engaging in sexual relations with children near the age of consent." *See* 352 Md. at 683, 724 A.2d at 53. Once again the majority has confused the analysis. The issue this case presents is not whether the appellant has a constitutional right to engage in sexual relations with a teenager younger than he is. I agree with the majority, appellant has no such constitutional right. Rather, the issue is the appellant's due process right to present a defense, as protected by the Fourteenth Amendment. Thus, *Bowers* is inapposite to the present case.

Finally, the State cannot demonstrate, nor has it even attempted to show, that Maryland's statutory rape law is the most narrowly tailored means to achieve the state's interest in protecting children, while infringing upon as few due process rights as possible. And, when the state has open to it less drastic ways of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles fundamental liberties. *See Kusper v. Pontikes,* 414 U.S. 51, 58–59, 94 S.Ct. 303, 308, 38 L.Ed.2d 260, 267 (1973) (citing *Dunn v. Blumstein,* 405 U.S. at 343, 92 S.Ct. at 1003, 31 L.Ed.2d at 284–85). While some children may require the protection of strict liability, many others do not. There are reasonable options available to the State. Recognizing "the increased maturity and independence of today's teenagers...," *see Perez v. State,* 111 N.M. 160, 803 P.2d 249, 251 (1990), the Model Penal Code has developed an approach that limits strict liability to those cases of sexual relations involving children under ten years of age. *See Garnett,* 332 Md. at 610–11, 632 A.2d at 816–17 (Bell, J., dissenting). There are, in addition, other options utilized by other States, such as allowing the defendant to present a defense whenever the "victim" lies about his or her age. *See id.* at 606–11, 632 A.2d at 815–17 (Bell, J., dissenting).

Maryland's sexual offense statutes protect some, but by no means all, children and punish only a few alleged perpetrators. Maryland Code (1957, 1996 Repl.Vol.), Art. 27, §§ 463 and 464A [8] punish the defendant who is 17 years old or older and engages in sexual activity with a 13–year–old. Likewise, §§ 464B [9] and 464C [10] punish defendants who engage in sexual relations with a 14 or 15–year–old, when the defendant is four or more years older than his partner. These are the only statutes the Legislature has enacted to punish persons who engage in consensual sexual acts with underage partners. This statutory scheme demonstrates the following. First, the State is not as concerned about the sexual exploits of all children as it is those who are considered so immature that there can be little doubt that they are too young to give consent. In those cases, strict liability may well be appropriate. Second, the State has made arbitrary distinctions between persons engaging in sexual intercourse. The 18–year–old who has consensual sexual relations with a 14–year–old, reasonably believing him or her to be older, faces 20 years in

---

**8.** That section provides:

"(a)Elements of offense.—A person is guilty of a sexual offense in the second degree if the person engages in a sexual act with another person:

\* \* \*

(3) Under 14 years of age and the person performing the sexual act is four or more years older than the victim...."

**9.** § 464B reads:

"(a)Elements of offense.—A person is guilty of a sexual offense in the third degree if the person engages in:

\* \* \*

(3) Sexual contact with another person who is under 14 years of age and the person performing the sexual contact is four or more years older than the victim...."

**10.** That section reads:

"(a) Elements of the offense.—A person is guilty of a sexual offense in the fourth degree if the person engages:

\* \* \*

(3) Except as provided in § 464B (a)(5) of this subheading, in vaginal intercourse with another person who is 14 or 15 years of age and the person performing the act is four or more years older than the other person...."

prison, while the person who is 17 ¾ years of age, who engages in the exact same conduct is guilty of no crime and, therefore, will face no punishment. The protection of those truly in need of strict liability protection certainly can be achieved short of putting at risk a defendant's right to a fair trial.

The fact that a majority of the States [11] hold that a defendant's due process rights may be ignored when the charge is statutory rape, is not a compelling reason for this Court to do likewise; whatever other courts may do does not provide a justification for us to sanction the infringement upon a defendant's due process right to a fair trial. Due process simply is not determined by reference to the number of courts ruling a particular way. It is of little consequence to the appellant that he was not sentenced to 20 years in prison, *see* 352 Md. at 678, 724 A.2d at 50, because he will be forever branded with the stigma of being a child sex offender. Moreover, the applicable inquiry is not whether the appellant spent one day in jail or 20 years; if he did not receive a fair trial, his conviction should not be allowed to stand. Because, § 463(a)(3) violates the Due Process Clause of the Fourteenth Amendment and the applicable provisions of the Maryland Declaration of Rights, the appellant's conviction should be reversed.

---

11. Justice Flanders of the Rhode Island Supreme Court reports that, "[w]ith [*People v.*] *Hernandez*[, 61 Cal.2d 529, 39 Cal.Rptr. 361, 393 P.2d 673 (Cal.1964)] and [the Model Penal Code of 1962] taking the lead, twenty three American jurisdictions, nearly half, now explicitly recognize some form of mistake of age defense." *State v. Yanez*, 716 A.2d 759, 784 (1998) (Flanders, J., dissenting).